**W. R. VERMILLION COMPANY, Inc.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 2282.

United States District Court
W. D. Missouri, S. D.

Feb. 20, 1968.

O. J. Taylor and Flavius B. Freeman (of Neale, Newman, Bradshaw, Freeman & Neale), Springfield, Mo., for plaintiff.

F. Russell Millin, U. S. Atty., Kansas City, Mo., John W. DeBruyn, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

COLLINSON, District Judge.

Plaintiff corporation brought this suit to recover income taxes paid by it, under protest, for the years 1961, 1962 and

1963. The taxes were assessed by reason of the disallowance as a proper deduction of part of the bonuses paid to the two executive officers of the corporation, who were also the principal stockholders.

These two executives are husband and wife, Mr. and Mrs. A. T. Driscoll. Mr. Driscoll has been continuously employed in the woodworking industry and lumber business since 1926. Mrs. Driscoll has worked almost as long in increasingly responsible positions in office work and office management.

In 1946 they started their own business in Southwest Missouri, first as purchasers and wholesalers of hardwood lumber, which was expanded to include the manufacture of various wood products.

In 1956 they sold this business and negotiated with the elderly owner of the plaintiff corporation. At that time this corporation bought wooden houseware items from small local manufacturers and resold them on the national market. It was only handling six items. From 1952 to the end of 1955 the company's net worth had declined from almost $61,000.00 to $41,775.00. But the Driscolls believed the company had a future and Mr. Driscoll turned down an offer to accept a much higher salaried position to work for this company, with the understanding that he could buy at least one-half the stock after a year's employment. The principal stockholder died in the next year and in the summer of 1957 the Driscolls acquired over 99% of the corporate stock for $55,000.00.

The Driscolls became the sole executives of the corporation at that time. They immediately consulted a certified public accountant, and following his advice, adopted by resolution of the Board of Directors the following compensation plan: Mr. Driscoll as president would be paid $200.00 a week; Mrs. Driscoll, as secretary and treasurer, would receive no salary (later amended to $40.00 a week and later $46.00 a week because of minimum wage laws); at the end of the year the sum of $5500.00 (10% of the capital investment) would be "reserved" from the profits; out of the remaining profits (if any) Mr. Driscoll would receive 45% and Mrs. Driscoll 15% as bonuses. The remaining 40%, plus the $5500.00 reserved, would be the corporations net profit after salaries and bonuses. This salary and bonus arrangement has continued in effect since that time through the taxable years in dispute. From a net worth of $61,597.00 on January 1, 1957, the corporation's net worth had increased to $236,022.00 on January 1, 1964. It paid one 10% cash dividend in 1963.

It is probably important to mention here that this corporation held no patents, franchises or distributorships. The situation where a distributor or franchised dealer benefits from a phenomenal population growth in his locality or a change in the buying public's demands, and profits tremendously without any new or extraordinary effort on his part, is a familiar one, but that is not this case. The evidence clearly shows that this corporation's success, in a highly competitive national market, is due solely to the hard work, ability and skill of Mr. and Mrs. Driscoll. For these services they received jointly in salaries and bonuses the amount of $59,178.00 in 1961, $77,390.00 in 1962, and $98,542.00 in 1963. Mr. Driscoll received approximately two-thirds and his wife one-third of this total. The District Director disallowed $15,338.00 for 1961, $35,203.00 for 1962, and $46,622.00 for 1963, as excess compensation not deductible by the plaintiff.

When the Driscolls became officers of this company it sold six items, none of which it manufactured. At the close of 1963 it sold 93 items, most of which it manufactured using special machinery designed and built by Mr. Driscoll.

There is no question but that the Driscolls worked long hours, without vacations, building up their company. They performed all those conventional duties involved in operating a manufacturing plant, such as buying new materials, in-

ventory control, hiring and firing, supervising the bookwork of a company whose sales rose from $438,000.00 to $966,000.00 in six years, designing and publishing a catalogue, and selling the finished product. In the light of common business experience the corporation could have employed a buyer, a personnel manager, a plant superintendent, a head bookkeeper, a sales manager, and had their catalogue prepared by an ad agency. But the evidence in this case shows that the success of this corporation has been due to some very different and special skills of Mr. and Mrs. Driscoll. Mrs. Driscoll designs all the products of the company. She has been extremely successful in designing, every year, new and different wooden houseware items which have enjoyed popularity with the buying public.

However, it is one thing to design an item and an entirely different problem to mass produce that item by machinery with a minimum of hand labor so that it can be sold profitably at a price the consumer will pay. Mr. Driscoll has designed and built the machines to do this. They are not obtainable from any machinery manufacturer. It seems that while Mrs. Driscoll's skill and success as a designer is largely responsible for this corporation more than doubling its sales from 1957 through 1963, Mr. Driscoll's ingenious machines for mass production are largely responsible for the gross profit almost tripling during the same period. (In fact, the net profit after payment of the challenged salaries and bonuses increased almost two and one-half times during the same period.)

This Court feels that the above facts are determinative of this case. There are many other facts which demonstrate the unique nature of the plaintiff's business and the unusual character of the contribution made by these two officers. For example, the products manufactured by plaintiff are considered luxury gift items and the large demand is at Christmas. All can be copied in cheaper wood by cheap foreign hand labor, and it is

necessary to have new, popular items for each Christmas season. The evidence shows that since the Driscolls assumed management of this company it has become the dominant manufacturer in the entire field, and its products are considered the "Cadillac" of the product line.

■ There was some lay witness testimony and one expert witness offered by the plaintiff as to the value of the officers' services. The testimony of the expert witness was received as an offer of proof. Because it was entirely based on an unverified, unofficial compilation of anonymous statistics, the Court is now ruling that the evidence of the expert is not admissible.

It has been held repeatedly that every case of this kind must stand upon its own facts. Mayson Mfg. Co. v. Commissioner of Internal Revenue, 178 F.2d 115 (6th Cir. 1949). Many cases were cited by both parties, none of which are particularly helpful as controlling the instant case.

■ Of course, this is not a case in which the bonus was authorized at the close of a profitable year. Such bonuses, if paid to officers who are also stockholders may often be treated as a dividend by the government. Neither is it the case where the bonus arrangement was initiated when a highly profitable year was predictable. The Court finds that the bonus arrangement when made was reasonable.

Again, it should be emphasized that the case before this Court is not comparable with the situation of a corporation manufacturing standardized articles of commerce. This case presents an unusual type of business requiring unique skills.

For the above reasons the Court finds the issues for the plaintiff.

Plaintiff's counsel shall submit a form of judgment within ten days.

This opinion shall serve as findings of fact and conclusions of law under the provisions of Rule 52(a) Fed.R.Civ.P.